1   Marian Zapata-Rossa (#032021)
**SNELL & WILMER L.L.P.**
2   One Arizona Center
400 E. Van Buren St., Suite 1900
3   Phoenix, Arizona 85044-2202
Telephone:   602.382.6000
4   Facsimile:   602.382-6070
MZapata-Rossa@swlaw.com
5

6   Neil A. Capobianco (pro hac vice forthcoming)
Brian S. Cousin (pro hac vice forthcoming)
7   **FOX ROTHSCHILD LLP**
101 Park Avenue, 17th Floor
8   New York, New York 10178
Telephone:   212.878.7900
9   Facsimile:   212.692.0940
NCapobianco@FoxRothschild.com
10   BCousin@FoxRothschild.com

11   *Attorneys for Plaintiff Pankaj Talwar*

12

13                **IN THE UNITED STATES DISTRICT COURT**

14                  **FOR THE DISTRICT OF ARIZONA**

15   PANKAJ TALWAR,

16            Plaintiff,                                Case No.

17   vs.                                                Judge's Name:

18   COPPERSTATE FARMS, LLC; and            **COMPLAINT**
COPPERSTATE FARMS
19   MANAGEMENT, LLC,

20            Defendants.                               JURY TRIAL DEMANDED

21

22        Plaintiff Pankaj Talwar ("Plaintiff"), by and through his attorneys, Fox Rothschild

23   LLP and Snell & Wilmer, L.L.P., for his Complaint against Defendants Copperstate

24   Farms, LLC and Copperstate Farms Management, LLC (collectively, "Defendants"),

25   alleges and states as follows:

26                         **Preliminary Statement**

27        1.     This is an action for (a) specific performance and a declaratory judgment,

28

125798190.8

(b) breach of contract, (c) breach of the covenant of good faith and fair dealing,

(d) statutory claim for failure to pay wages, (e) securities fraud, and (f) common law

fraud, under the state statutory and common laws of the State of Arizona, all arising from

Defendants' attempt to deprive Plaintiff of the equity and remuneration that he was

promised when he agreed to be Defendants' President and Chief Executive Officer

("CEO").

## **Jurisdiction and Venue**

2.    The Court has jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(1) because this is a civil action between a citizen of the State of California and

Arizona limited liability companies with their principal places of business also located

within the State of Arizona, and the amount in controversy exceeds $75,000, exclusive of

interest and costs.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the instant claims occurred in this

district.

## **The Parties**

4.    Plaintiff Pankaj Talwar is a California citizen who resides in San Francisco,

California.

5.    Upon information and belief, Defendant Copperstate Farms, LLC is an

Arizona limited liability company with its principal place of business located at 650 North

Industrial Drive, Snowflake, Arizona 85937 and/or 5090 North 40th Street, Suite 170,

Phoenix, Arizona 85018.

125798190.8

6.     Upon information and belief, Defendant Copperstate Farms Management, LLC is an Arizona limited liability company with its principal place of business located at 650 North Industrial Drive, Snowflake, Arizona 85937 and/or 5090 North 40th Street, Suite 170, Phoenix, Arizona 85018 and, upon information and belief, is a wholly-owned subsidiary of Copperstate Farms, LLC.

**<u>Background Facts</u>**

7.     Plaintiff Pankaj Talwar was gainfully employed as CEO of a food and beverage division of an international company and was receiving other potential job opportunities when he was lured away by Defendants to serve as their CEO.  Plaintiff accepted Defendants' job offer in large part because Defendants promised him significant equity-based incentives that were estimated to be worth up to $10 million as long as Plaintiff was able to grow the business in accordance with Defendants' targets. Defendants' offer of equity-based incentives was the primary reason that Plaintiff accepted Defendants' job offer.

8.     On or about February 15, 2019, Plaintiff and Defendant Copperstate Farms, LLC entered into an Interim Employment Agreement, under which Plaintiff served as the Interim President & Chief Operating Officer.  The Interim Employment Agreement stated that Defendant Copperstate Farms, LLC as "Employer contemplates that within six months …, [Plaintiff] would become President & Chief Executive Officer as part of a replacement or superseding employment agreement."

9.     The Interim Employment Agreement also sketched out the equity-based incentives that the Parties intended to incorporate into the "replacement or superseding

125798190.8

employment agreement."

10.     On or about January 31, 2020, Plaintiff and Defendant Copperstate Farms Management, LLC entered into the Employment Agreement (the "Employment Agreement"), under which Plaintiff served as the President & Chief Executive Officer.  At that same time, Plaintiff and Defendant Copperstate Farms, LLC entered into the Copperstate Farms LLC Award Agreement (the "Award Agreement"), which described the terms under which Plaintiff's 6000 Incentive Units (represented to be 3.5% of the Company's equity) would vest, be subject to repurchase, and/or be subject to accelerated vesting.

11.     Plaintiff's Employment Agreement promised Plaintiff an annual base salary of $350,000 and a quarterly performance bonus with a target of up to fifty percent (50%) of his quarterly salary, subject to under and over achievement, based on attainment of specific revenues, cash flows, and EBITDA targets that the Parties mutually agreed upon.

12.     Plaintiff's Employment Agreement further promised 6000 Incentive Units in Defendant Copperstate Farms, LLC (the "Company"), which were intended to represent "profits interests" in the Company for federal income tax purposes.  Pursuant to the Employment Agreement, Plaintiff's right to share in the distributions of available cash flow and other distributions were limited by the Company's Operating Agreement and were subject to monthly vesting and accelerated vesting under specified circumstances.

13.     Notably, Section 3(b) of the Award Agreement states that "100 percent of the Unvested Units will vest in full immediately … if your employment is terminated by the Company other than for Cause or by you for Good Reason …," and this provision is

incorporated by reference into Plaintiff's Employment Agreement.

14.     Additionally, Section 9(c) of Plaintiff's Employment Agreement stated that "Employee will be entitled to a severance payment equal to six (6) months of Employee's then-current Base Salary if Employee's employment is terminated by the Company without Cause or by Employee for Good Reason."

15.     Under Plaintiff's leadership, the Company achieved and exceeded the key performance indicator targets that were agreed upon between the Parties.  As a result, on or about September 21, 2020, the Company approved a 100% payout of Plaintiff's targeted performance bonus (of 50% of his Salary) in the total amount of $87,500 for the first and second quarters of 2020 ($43,750 for each of those two quarters).  Similarly, on or about December 10, 2020, the Company approved a 100% payout of Plaintiff's targeted performance bonus in the amount of $43,750 for the third quarter of 2020.

16.     Under Plaintiff's leadership, the Company exceeded the agreed-upon key performance indicator targets for fiscal year 2020.  Specifically, in fiscal year 2020, the Company achieved 110% of the net revenue target and further achieved 146% of the EBITDA target.  Significantly, the Company's net revenues grew 250% between fiscal year 2018 (prior to Plaintiff's hiring) and fiscal year 2020.

17.     At a meeting with several Board members on March 4, 2020 at the Company's farm in Snowflake, Arizona, Plaintiff requested a formal performance evaluation, with 360 feedback.  While Plaintiff had not received any formal feedback on his performance after two (2) years of employment, the Board turned down Plaintiff's request.

125798190.8

18.     On April 23, 2021, Plaintiff sent an email to Defendants' Compensation Committee summarizing the delivery of the key performance indicator targets for the fourth quarter of 2020 and requesting that a performance bonus be paid out to him for that quarter in view of the Company's over achievement against key performance indicator targets.

19.     Defendants did not respond to Plaintiff's request for payment of his performance bonus for the fourth quarter of 2020.

20.     Then, on April 30, 2021, without any forewarning or explanation, Defendants terminated Plaintiff's employment – effective immediately – and purportedly for "Cause," even though no "Cause" or other justification was conveyed to Plaintiff either in writing or orally.

## FIRST CAUSE OF ACTION
**(Specific Performance & Declaratory Judgment)**

21.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

22.     Plaintiff's Employment Agreement constitutes a valid and enforceable contract between Plaintiff and Defendants, and the terms thereof are certain and fair.

23.     Plaintiff has not acted inequitably in any way.

24.     Specific performance of Plaintiff's Employment Agreement – by requiring Defendants to issue 6000 Incentive Units in Copperstate Farms, LLC to Plaintiff – would not inflict hardship upon Defendants or the public that outweighs the anticipated benefit to Plaintiff.

25.     Since the 6000 Incentive Units in Copperstate Farms, LLC is unique and

6

125798190.8

special property that cannot be replicated by an award of damages, Plaintiff has no

adequate remedy at law to compensate him for being deprived of the 6000 Incentive Units

that Defendants promised him if his employment were terminated without "Cause."

26.     Accordingly, Plaintiff is entitled to specific performance of his Employment

Agreement such that Defendants should be ordered to issue 6000 Incentive Units in

Copperstate Farms, LLC to Plaintiff, with all the right and privileges normally

appurtenant to such an issuance.

27.     Pursuant to 28 U.S.C. § 2201(a), Plaintiff is also entitled to a judgment

declaring that the 6000 Incentive Units to which he is entitled are not subject to

repurchase.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

28.     Plaintiff repeats and realleges each and every preceding paragraph as if fully

set forth herein.

29.     Plaintiff's Employment Agreement constitutes a valid and enforceable

contract between Plaintiff and Defendants.

30.     Plaintiff performed the contract in good faith by serving as the President and

Chief Executive Officer of Defendants and satisfactorily performing the duties reasonably

assigned by the Board of Directors and/or by the Manager Global Pacific Funding, LLC in

connection with developing, updating and implementing Defendants' approved business

plan.

31.     Defendants did not provide Plaintiff with written notice of any Performance

Concerns (as that term is defined in Section 9(d) of Plaintiff's Employment Agreement) at

7

any time during Plaintiff's employment by the Defendants.

32.     Without "Cause" (as defined in Section 9(d) of the Employment Agreement) or other stated reason, Defendants summarily terminated Plaintiff on April 30, 2021 and sought to deprive him of the severance benefits and accelerated vesting of the Incentive Units to which Plaintiff would be entitled in connection with a termination without "Cause."

33.     Defendants breached Plaintiff's Employment Agreement by purporting to terminate Plaintiff's employment for "Cause" when no "Cause" (as defined in Section 9(d) of the Employment Agreement) actually existed.  Defendants further breached the Employment Agreement (a) by failing to provide Plaintiff with written notice of the specific alleged "Cause" for termination, and (b) by failing to provide Plaintiff written notice of any "Performance Concerns," and (c) by unilaterally declaring that Plaintiff's undescribed "conduct" was not curable.

34.     Plaintiff has been damaged by Defendants' breaches in a variety of ways, including, but not limited to:  (a) he has been deprived of accelerated vesting of the 6000 Incentive Units that he had been awarded, (b) he has been deprived of a severance payment equal to six (6) months of pay, in an amount equal to at least $175,000, and (c) he has been deprived of a performance bonuses for the fourth quarter of 2020, an overachievement bonus for fiscal year 2020, and a performance bonus for the first quarter of 2021 (totaling at least $129,719 in bonus pay), and (d) he has been deprived of reimbursement of his Company-related expenses in the amount of at least $6,452.78.

35.     By reason of the foregoing, Defendants are liable to Plaintiff in the amount

125798190.8

of the value of the accelerated vesting, severance payments, bonuses, and expenses plus interest at 10% per annum and taxable costs.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

36.    Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

37.    Inherent in every contract is an implied covenant of good faith and fair dealing that requires both parties not to act to impair the right of the other party to receive the benefits which flow from their agreement or contractual relationship.

38.    Despite the absence of any legitimate "Cause" and in order to deprive Plaintiff of the accelerated vesting, severance payments, and performance bonuses that Plaintiff had the right to expect from the contract, Defendants breached the covenant of good faith and fair dealing inherent in Plaintiff's Employment Agreement by intentionally acting to impair Plaintiff's right to receive the benefits of the contract.

39.    Despite the special relationship between the Parties arising from their fiduciary duties to each other, Defendants' Manager, Members, and/or Board of Directors acted in bad faith with the intent of injuring Plaintiff in order to obtain for themselves the equity that they had promised to Plaintiff in exchange for Plaintiff's agreement to serve as the Defendants' President and Chief Executive Officer.

40.    Plaintiff has been damaged by Defendants' breaches in a variety of ways, including, but not limited to:  (a) he has been deprived of accelerated vesting of the 6000 Incentive Units that he had been awarded, (b) he has been deprived of a severance payment equal to six (6) months of pay, in an amount equal to at least $175,000, (c) he

has been deprived of a performance bonus for the fourth quarter of 2020, an overachievement bonus for fiscal year 2020, and a performance bonus for the first quarter of 2021 (totaling at least $129,719 in bonus pay), and (d) he has been deprived of reimbursement of his Company-related expenses in the amount of at least $6,452.78.

41.     By reason of the foregoing, Defendants are liable to Plaintiff in the amount of the value of the accelerated vesting, severance payment, bonuses, and expenses, plus punitive damages, interest at 10% per annum, and taxable costs.

## FOURTH CAUSE OF ACTION
### (Ariz. Rev. Stat. § 23-355 Claim for Failure to Pay Wages – Incentive Units and Bonuses)

42.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

43.     Defendants procured Plaintiff's services by specifically promising to pay him 6000 Incentive Units (with accelerated vesting if he were terminated without "Cause") and quarterly performance bonuses, but now – after receiving the benefit of Plaintiff's work for more than two (2) years – Defendants seek to evade financial responsibility for those promises despite the lack of a good faith dispute that such promises must be kept.

44.     Pursuant to Plaintiff's Employment Agreement, Defendants agreed to pay Plaintiff a quarterly performance bonus based on mutually agreed revenue, cash flow, and EBITDA targets.

45.     In fact, Section 3(b) of Plaintiff's Employment Agreement specifically mandated that each quarterly bonus be paid out "within 30 days following the close of the

quarter during which such bonus was earned."

46.     By December 2020, Defendants had paid Plaintiff's quarterly performance bonuses for the first, second, and third quarters of 2020.  Since Plaintiff had achieved one hundred percent (100%) of his quarterly targets for said quarters, such bonuses where paid at the full target amount of fifty percent (50%) of quarterly salary.

47.     Plaintiff achieved his quarterly target for the fourth quarter of 2020, entitling Plaintiff to a quarterly performance bonus of $43,750.  Additionally, pursuant to Section 3(b) of Plaintiff's Employment Agreement, which provides for overachievement and payment of a performance bonus that exceeds the 50% of salary level, as well as several conversations that Plaintiff had with individual Board members confirming the above, Plaintiff is entitled to receive an overachievement performance bonus for fiscal year 2020.  With revenues achieved at 110% of target and EBITDA achieved at 146% of target, Plaintiff was entitled to receive an overachievement bonus for 2020 in the amount of $49,000.  Although Plaintiff requested that these bonuses be paid to him, Defendants failed and refused to pay Plaintiff either his fourth quarter 2020 performance bonus or his 2020 overachievement bonus and have raised no dispute over the amount due.

48.     Plaintiff achieved eighty-five percent (85%) of his quarterly targets for the first quarter of 2021, entitling him to receive a bonus for that quarter in the amount of $36,969.  Defendants have failed and refused to pay Plaintiff his first quarter 2021 performance bonus and have raised no dispute over the amount due.

49.     Defendants have also failed to provide Plaintiff with the 6000 Incentive Units to which he is contractually entitled.

125798190.8

50.     The 6000 Incentive Units, the quarterly performance bonuses, and the 2020 overachievement bonus each constituted a nondiscretionary piece of Plaintiff's compensation package due to Plaintiff in return for labor or services rendered, are set forth clearly in Plaintiff's Employment Agreement and Award Agreement, and represent compensation that Plaintiff had and continues to have a reasonable expectation to be paid.

51.     The 6000 Incentive Units that Plaintiff "shall be entitled to receive" pursuant to Section 3(b) of Plaintiff's Employment Agreement constitutes "wages" as defined in Arizona Revised Statutes § 23-350(7).

52.     Plaintiff's quarterly performance bonuses and the 2020 overachievement bonus constitute "wages" as defined in Arizona Revised Statutes § 23-350(7).

53.     Pursuant to Arizona Revised Statutes § 23-355, Defendants' failure to pay Plaintiff the 6000 Incentive Units, his last two performance bonuses, and his 2020 overachievement bonus entitles Plaintiff to an amount that is treble the amount of all of these categories of compensation.

54.     Since Plaintiff is entitled to $129,719 in unpaid bonuses, Defendants' failure to pay establishes that Defendants are liable to Plaintiff for treble damages in the amount of $389,157, plus interest at 10% per annum from the date that each quarterly bonus was required to be paid.

55.     With respect to the 6000 Incentive Units, Plaintiff is entitled to the 6000 Incentive Units themselves plus two (2) times the value of such 6000 Incentive Units, plus interest at 10% per annum from the date of Defendants' termination of Plaintiff.

12

125798190.8

**FIFTH CAUSE OF ACTION**
**(Ariz. Rev. Stat. § 23-355 Claim for**
**Failure to Pay Wages – Severance Pay)**

56.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

57.     Defendants procured Plaintiff's services by specifically promising to pay him severance pay, but now – after receiving the benefit of Plaintiff's work for more than two (2) years – Defendants seek to evade financial responsibility for this promise despite the lack of a good faith dispute that such promises must be kept.

58.     Defendants have failed to pay Plaintiff the six (6) months of severance pay to which he was contractually entitled.

59.     The six (6) months of severance pay constituted a nondiscretionary piece of Plaintiff's compensation package due to Plaintiff in return for labor or services rendered, is set forth clearly in Plaintiff's Employment Agreement, and represents compensation that Plaintiff had and continues to have a reasonable expectation to be paid.

60.     Plaintiff's severance pay constitute "wages" as defined in Arizona Revised Statutes § 23-350(7).

61.     Pursuant to Arizona Revised Statutes § 23-355, Defendants' failure to pay Plaintiff his severance pay entitles Plaintiff to an amount that is treble the amount of that severance pay.

62.     Since Plaintiff is entitled to $175,000 in severance pay, Defendants' failure to pay establishes that Defendants are liable to Plaintiff for treble damages in the amount of $525,000, plus interest at 10% per annum from the date that the severance pay was

13

125798190.8

required to be paid.

### SIXTH CAUSE OF ACTION
**(Arizona Securities Act, Ariz. Rev. Stat. § 44-1991)**

63.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

64.     The 6000 Incentive Units – represented to be 3.5% of the Company's equity at the time of grant – promised in Plaintiff's Employment Agreement constitutes a transaction within the State of Arizona involving an offer to sell and/or a sale of securities within the meaning of Ariz. Rev. Stat. § 44-1991.

65.     Defendants engaged in a transaction, practice or course of business that operated as a fraud or deceit upon Plaintiff by purporting to terminate his employment for "Cause" when no "Cause" as defined in the Employment Agreement existed and without offering any written explanation of the purported "Cause," in order to deprive Plaintiff of the 6000 Incentive Units of the Company's equity.

66.     Defendants' decisionmakers in the decision to terminate Plaintiff for "Cause" were the same Manager, Members, and/or Board of Directors who stood to benefit from cutting Plaintiff out of his promised share of the value of the Company's growth, which Plaintiff was instrumental in causing to occur.

67.     Plaintiff has been damaged by Defendants' fraud and deceit in an amount to be determined at trial, but not less than the value of the 6000 Incentive Units in Defendant Copperstate Farms, LLC that Plaintiff was promised in his Employment Agreement, punitive damages, interest at 10% per annum, and taxable costs.

125798190.8

**SEVENTH CAUSE OF ACTION**
**(Common Law Fraud)**

68.     Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth herein.

69.     Defendants – through the Board of Directors consisting of Scott Barker, Fife Symington, Kevin Burdette, Brian Cousins,[1] and Jon Ein ("Board of Directors") – represented to Plaintiff that he would become fully vested in all 6000 Incentive Units in the event that Defendants terminated Plaintiff without "Cause" as defined in Plaintiff's Employment Agreement.

70.     Said representation was false.

71.     Said representation was material to Plaintiff as he would not have accepted Defendants' offer of employment without the promise that his grant of equity (represented to be 3.5% of the Company) would become fully vested in the event of his termination without "Cause."

72.     Defendants – by and on behalf of the Board of Directors – knew that their representation concerning Plaintiff's entitlement to full vesting of all of the 6000 Incentive Units in the event of termination without "Cause" was false.

73.     Defendants intended for Plaintiff to rely upon Defendants' promise of full vesting of his granted equity in the event of termination without "Cause."

74.     Plaintiff did not know that Defendants' representation of fully vested equity in the event he was terminated without "Cause" was false and relied to his detriment on

---

[1] Copperstate Board Director "Brian Cousins" should not be confused with Plaintiff Counsel of Record "Brian S. Cousin."

15

the representation being true.

75.     Plaintiff reasonably relied on Defendants' representation.

76.     Plaintiff suffered proximate injury as a result of the falsity of Defendants'
representation when Defendant purported to terminate Plaintiff with "Cause" when no
"Cause" existed.

77.     As a result of Defendants' fraud, Defendants are liable to Plaintiff in an
amount equal to the value of the 6000 Incentive Units, interest at 10% per annum,
punitive damages, and taxable costs.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Pankaj Talwar respectfully requests that this Court grant
the following relief:

A.      An Order of specific performance requiring Defendants to recognize as fully
vested and to issue to Plaintiff the 6000 Incentive Units in Defendant
Copperstate Farms, LLC, pursuant to the First Cause of Action;

B.      A Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) that the 6000
Incentive Units to which Plaintiff is entitled are not subject to repurchase,
also pursuant to the First Cause of Action;

C.      In the alternative to specific performance, an Award of damages to Plaintiff
and against Defendants for an amount equal to the value of the 6000
Incentive Units, pursuant to the Seventh Cause of Action;

D.      An Award of damages to Plaintiff and against Defendants for six (6) months
of severance pay, equal to $175,000, pursuant to the Second and/or Third
Causes of Action;

E.      An Award of damages to Plaintiff and against Defendants for $6,452.78 in
unreimbursed business expenses, pursuant to the Second and/or Third
Causes of Action;

F.      An Award of punitive damages in an amount to be determined at trial,

16

pursuant to the Third, Sixth, and/or Seventh Causes of Action;

G.   An award of damages to Plaintiff and against Defendants (1) for double the value of the 6000 Incentive Units (in addition to specific performance of issuance of the 6000 Incentive Units to Plaintiff), and (2) for treble damages for the bonuses that Plaintiff earned and Defendants failed to pay in the amount of not less than $389,157, plus 10% interest, pursuant to the Fourth Cause of Action;

H.   An award of damages to Plaintiff and against Defendants for treble damages for the severance pay that Plaintiff earned and Defendants failed to pay in the amount of $525,000, plus 10% interest pursuant to the Fifth Cause of Action.

I.   With respect to Plaintiff's claim for unpaid bonuses and severance pay, in the alternative in the event that the Fourth Cause of Action is not successful, an award of damages in the amount of not less than $304,719, pursuant to the Second and/or Third Causes of Action;

J.   An award of reasonable attorneys' fees and taxable costs;

K.   An award of pre-judgment and post-judgment interest at a rate of 10% per annum, and taxable court costs in connection with all of the amounts awarded under the Complaint; and

L.   An award of such other and further relief as the Court may deem just, equitable, and proper.

125798190.8

1   Dated: October 27, 2021                  **FOX ROTHSCHILD LLP**

2

3                                            */s/ Neil A. Capobianco*

4                                            Neil A. Capobianco (pro hac vice forthcoming)
                                             Brian S. Cousin (pro hac vice forthcoming)
5                                            101 Park Avenue, 17th Floor
                                             New York, NY 10178
6                                            Tel:   212.878.7900
7                                            Fax:   212.692.0940
                                             NCapobianco@FoxRothschild.com
8                                            BCousin@FoxRothschild.com

9
                                             **SNELL & WILMER L.L.P.**
10

11                                           */s/ Marian M. Zapata-Rossa*

12                                           Marian M. Zapata-Rossa
                                             400 E. Van Buren, Suite 1900
13                                           Phoenix, Arizona 85004-2202
                                             Telephone:   602.382.6000
14                                           Facsimile:   602.382.6070
15                                           MZapata-Rossa@swlaw.com

16                                           *Attorneys for Plaintiff Pankaj Talwar*

17

18

19

20

21

22

23

24

25

26

27

28

18